William Driscoll May it please the Court, Counsel, I'm here today on behalf of Matthews Township and William Driscoll, Greg Albrecht and Bill Albrecht, the three township board members who are named in this suit. At the core of this case are two things. Township decision-making regarding road repairs and open meeting violations. The importance of this case goes well beyond a small township in South Dakota. If my clients are not given the protection of qualified immunity and claims such as the ones plaintiffs have filed based on board members' failure to conduct proper meetings that comply with state open meeting laws are allowed to proceed, there's the potential for a section 1983 claim virtually any time an open meeting violation occurs. My argument will address three areas where we believe the district court erred. First, my clients should have been protected by qualified immunity from There was no adverse impact here that would chill a person of ordinary firmness from continuing to speak out. Second, my clients should have been protected by qualified immunity from Mary Lee's First Amendment Association claim. This case is distinguishable from Peeper v. Calloway County Ambulance District and it is unclear that an elected official performing ministerial tasks shares the same association rights as an elected decision-maker. At a minimum, Peeper is different enough that the associational rights of Mary Lee, one of the plaintiffs in this case, were not clearly established. Third, my clients should have been protected by qualified immunity from plaintiffs' First Amendment petition claims because the law does not provide a federal constitutional right to access township board meetings. As the district court concluded with respect to the free speech claim, if that right exists, it is not clearly established. And finally, as it relates to the cross appeal, our position is twofold. First, with the exception of the appeal of the free speech, the district court's decision on the free speech claim, which we agree is intertwined with the qualified immunity issues being appealed by us, the court should decline to exercise pendant jurisdiction. The second part of our argument on the cross appeals is that the district court properly decided all of the issues relating to qualified immunity and dismissed those counts for the correct reasons. To begin, with regard to the retaliation claim to prevail, the plaintiffs needed to show that my clients took adverse action against them that would chill a person of ordinary fitness from continuing in their speech activity. There's no allegation or proof of anything in the nature of a, quote, concrete consequence, end quote, as this court has sometimes referred to it. The things raised by the Lees in this case are failure to give notice of meetings, withholding access to certain records, and generally making Mary Lee feel unwelcome. While we can argue about whether my clients lacked professionalism or acted inappropriately under state open meeting laws, there was nothing about their claim is that there has to be some sort of punitive, concrete consequence to the plaintiffs in order to proceed with the retaliation claim. Wasn't the allegation that she was excluded in retaliation to the statements of the Lees and the allegations of the Lees? Yes, and it's our position that not being given notice of a meeting, first of all, isn't the same as being excluded from the meeting, and second of all, isn't the same type of punitive, concrete consequence that survives a summary judgment motion on a retaliation claim. Well, is that the one, I believe the district court said there were still fact issues to be resolved, and so it was premature to grant qualified immunity? That was the basis of the district court's finding. However, the basis of our appeal is strictly on the legal issue of whether or not this is a sufficient adverse consequence such that the retaliation claim can survive summary judgment. So she's arguing she complained about what the governing body was doing, and then in response, the governing body didn't notify her about the future meetings. That's correct. Is that the argument? That's correct. And that, she's saying that chilled her from future complaining, or would have prevented a reasonable person from complaining in the future. That's the theory, and that's the legal issue that you think we need to decide? That's correct, Your Honor. In our brief, we cited to a couple of the court's previous cases, forgive the pronunciation, Nock v. City of Park Hills, and Carroll v. Pfeffer. We would regard this case as being on the same plane as those, because there's simply not the type of concrete consequence that is actionable. In those cases, what you had were a series of what I would call harassing-type conduct among the governmental agency and the plaintiffs. And the court in both instances found that that was not sufficient to state a cognizable claim. And I really regard this as being similar in nature, although I don't even know that this was in the nature of harassment. It was probably in the nature of harassment, as opposed to something that was intended with ill will, or intended to keep her from speaking out. With regard to . . . I thought you had one witness who said that her speaking up might have had something to do with, what was it, with the failure to give notice? Or what was that statement about? I believe you're referring to Mr. Driscoll's comment, which has been cited throughout the briefs. And I'd like to address that, because I think that comment . . . Could you remind me what he said? He might have had something to do with what? He was asked the question about why the township sent back the FEMA funds without holding a properly noticed meeting and getting input from the public. Yeah. And his response was, well, it started off, he said, something along the lines of, well, it was kind of business as usual. This was not unusual for the township to conduct business like this. Now, again, I'm not here to defend the township's manner of conducting business prior to this lawsuit. I think there are probably some problems under state law. But what I would say is that the comment that he made, that it might have something to do with it, was in the context of talking about, well, it wasn't that unusual for this township to cut checks or do things without actually holding a meeting. And I just wanted that to be made clear, that while he did say it might have had something to do with it, there was more conversation in that transcript that was excluded from the briefing. And I think it's significant. Sounds like the court may have been correct in saying there's fact issues here that need to be resolved. I disagree. I think that even taken as a whole with respect to the reasons that the township didn't notice these meetings, you're still not having the type of evidence that would give them a claim of retaliation. She was able to give her input on the issues that were going to come up at the meeting, right? That's why they retaliated, supposedly. Isn't that right? She made her views known? The views had been previously made known at a previous meeting, yes. That's With respect to Mary Lee's associational rights, the discussion on this portion of the plaintiff's claim centered on the court's decision in Peeper versus Calloway County Ambulance District. And the value of that case is how different it is, not how similar. In defining what is clearly established law, Peeper does not speak to the factual scenario that's present in this case. Peeper was an elected member of an ambulance board of directors. Her husband was an EMT and a member of the ambulance district. And once she obtained her seat on the board, the other board members passed a resolution that limited her participation on a wide variety of topics. Essentially, she was one of the decision makers on the board, and the other board members took preemptive action to take away her vote. By contrast, in this case, Mary Lee was the clerk. She did not have a vote. Her duties were undisputedly ministerial in nature. But Mary Lee was an elected official, correct? Which is the same, at least as far as that goes, as Peeper. To the extent she's elected, that is a similarity. It seemed to me that Peeper was relying on sort of Supreme Court cases that sort of say, when you've got an elected official, it's not just the official, but it's the voters who chose Mary Lee to represent them as the township clerk and whether or not those are truly ministerial tasks or roles may be in the eye of the beholder. You know, for example, wasn't there some information, someone said, well, now we can do our minutes the way we want to. I mean, you could take that either way, but that's not quite as ministerial if people are viewing what people put in the minutes, a ministerial task, as being substantive and worth sort of fighting about. I understand your point, but I guess what I would bring it back to is the fact that what we're talking about here are essentially open meeting violations. You know, they keep using the term excluding her from the meetings, but what we're talking about is failing to provide notice. Well, the effect is essentially to keep her from doing what her job required her to do, which was to manage and follow a true record of all proceedings. And how can she do that if she isn't notified as to when there would be a meeting? Her responsibility is to be there and to create a record for the benefit of the public. It seems a direct effort to avoid that taking place. And I don't understand. What's the question, Your Honor? I guess it is. Well, the question is, it seems as if there is an intent to interfere with her performing her elected responsibilities, which were to maintain and manage the records of the township, particularly of the supervisor's meetings. And I guess my response to that would be that even if that's true, when you read peeper on its face, what that tells you about interfering with an elected official's role, it doesn't speak to the situation that we have here. And so I think that the issue that we've raised on appeal is whether or not the right is clearly established. You're saying it would be an extension of peeper to go from an elected person like that to a clerk. That's exactly what I'm saying. And if it's an extension in the law, then it's not clearly established. That's the argument. That's exactly the argument. I see that I'm up to my rebuttal time. I'd like to reserve the remainder of my comments for rebuttal. All right. Thank you, Mr. Peters. Mr. Donahoe. Thank you, Chief Judge Smith, members of the panel, counsel. I'm here to explain some more context and to further provide the basis for Mary Lee's clerk duties that she was elected to perform and also to talk a little bit more about Roger Lee, her husband, who's here in the audience with us today. This is very important to both Roger and Mary Lee, and both of them know a little bit about how elected officials are supposed to act when they represent constituents, because Mary Lee was an elected township clerk. Her husband, Roger, is an elected county commissioner in the county in which this township is located in South Dakota. In regard to the allegation that the requirements under the state statutes here for a township clerk are merely ministerial duties, we have to differ and explain a little bit more about what the clerk really does. It's more than just giving out a notice to the rest of the township that there's going to be a public board meeting. It's more than just taking those records. She's also, or he, whoever the township clerk would be, are responsible for maintaining those records and including the financial audited statements and other things that are kept by the treasurer, who's also an elected official. Their distinction by the defense here is that those people who do not vote, who are not supervisors, are doing things other than actions that are protected under the First Amendment. Well, I think to be more precise, the argument is Peeper was about someone who's comparable to a supervisor, and it's an open question whether what your client was doing is protected in the same way. I think if you could address it in that context, it would be more helpful because it's a qualified immunity appeal. Absolutely, Judge Collison. Here, a reasonable person in the shoes of the other members of the board here, and that would include the treasurer who doesn't vote, they all should have known that denying First Mary Lee the right and the obligation that she has as an attorney would be a violation of the First Amendment. Under Peeper, rather than an extension, in fact, it's the opposite. What this court said in the Peeper case was that you can't interfere with those associational rights of the voters and the right of the elected official to perform their duties by restricting their speech. It's beyond that here. They've not only restricted her right of speech, where she was trying to provide input on some of these issues and raising questions about some of these things by saying we shouldn't misuse federal funds. And we shouldn't do things that are not right in regard to how we reconstruct this road. She was also saying, look, I got to keep the records and I've got to do those things that are required here. They prevented her from doing that. Then even after they made these decisions outside of meetings that could have been affected by public discussion and public input, they made decisions about how they were going to do the road repair. And in addition to that, how they were going to address the misuse of the federal funds and the return of those funds that were accepted by the federal government. There was a dispute even after that about what the minutes were going to say. And that wasn't resolved until they got somebody else elected as township clerk and they modified the minutes the way they wanted them to be written. And the record that is now kept for that township reflects their wishes. That's how they prevented Mary Lee from exercising her duties as a township clerk. In addition, Roger Lee had an associational right and we will admit there's no case law in this circuit that says there's a right of the general public to come to a meeting of a township like this and express their views. Some of these decisions could possibly be made without public input. That's not exactly what we're arguing here though. What we're arguing is Roger Lee did raise this. There was a dispute about how to proceed in a meeting in October of 2012. They excluded everyone. They kicked everybody out and sent everybody home ostensibly. Instead, some of the people then went to another location and started talking about these things. Now the defense wants to just couch this as a violation of open meeting laws, but it's important that from that point on what happened was a series of decisions made by people who don't have decision-making authority outside of these statutorily required open meetings. The board acted in a way to retaliate against Roger Lee and retaliate against his wife because they dared raise these issues that were of public concern. That's a violation of their first amendment rights. What's, what's the retaliation here that they couldn't go to the meetings? The retaliation is, well, there's some background here I need to explain and it's in the affidavit of Gail Larson, which is found in the appendix. I believe it's at page 191 and 192. Gail Larson was the elected board of supervisors or township supervisor. Okay. So he's the representative for the Lees in their area and they've got what are essentially like districts in the township. Gail Larson was not involved in making some of the subsequent decisions that led to this road and the return of money to the federal emergency management agency. He was excluded from being able to participate in those decisions. And he's also an elected official. They excluded Mary as the township clerk intentionally because they didn't want her to know about this, to give a notice to the public or to keep these records. So they could do whatever they wanted, however they wanted. And then, as I said before, to top it off, after they make all these decisions, they're not even going to let her put down in minutes what she understood their actions to have been. And they're going to wait until they can get somebody else elected as township clerk so they can do it the way they want. The associational rights and the right to petition for redress were clearly violated here. That's clearly established. There's no qualified immunity for those things. And the district court properly found that in this circumstance, we've got issues of fact at a minimum that would preclude qualified immunity for the defendants in their individual capacities. I want to touch briefly on how we think that also is the same evidence that supports a claim for official acts by these defendants and on behalf of the township. Under the Monell test, obviously we have to establish that this was the policy of the board of supervisors or board of the township here, excuse me. That board, repeatedly before this and after this, until they were held to account under an open meetings law violation that was filed by our clients, they were making decisions without holding meetings. They testified in their case, in depositions, including Bill Driscoll, we outside of public meetings as a matter of routine. That's a custom. It was also their policy to make these decisions in that way. Why? Because that gets things done efficiently. And in this particular case, an unelected person who is a relative of the treasurer was the guy who did the contract here and installed all of the work that we're disputing and had the issues in regard to the federal funds. Related to that, his brother who doesn't vote, but is the treasurer, he's like the clerk, they don't vote. It's the other three. Bill Albrecht makes a decision at the construction site with his brother and says, we're not going to put in this nine foot culvert that we promised the leaves we were going to put in. And that's important because they went to an eight foot culvert. And although the math might not seem like it, when the road was washed out in flooding in 2011, there was an eight foot culvert and a three foot culvert. If you install a nine foot culvert, that's actually a bigger capacity than both the eight and the three foot culvert together. That was the minimum standard we think should have been complied with here. Actually, the study that the township commissioned to apply for and obtain over $32,000 in federal funds said you have to put in two nine foot culverts to solve this issue. That was not done in the field. They said, we're going to go to an eight foot culvert because the nine foot is too expensive. That decision was made by somebody who not, who is not a voting member of the township board. And then later it was ratified by the others in these meetings that they held without any public notice and without public input. That is where we say it became the policy of this township to extend the their, their custom of making these decisions and make it the policy of this particular board that they're going to retaliate and they were going to make sure that the leaves were not going to get what they had asked for. And there's an affidavit I've referred to before from Gail Larson. He talks about the language that was used in previous meetings up to that point where they didn't care and they used an expletive to talk about how they didn't care about what Roger Lee thought or what he was going to get. They were going to get him, give him what they wanted to give him. The record does represent here that there is a policy and a practice that became a custom of this board to basically decide things the way they wanted to. And they don't care about clearly established first amendment rights. They don't care about state open meeting laws. They don't care about other regulations that would apply to the use of federal funds. With all of that in mind, I'm not going to address the other arguments that we've made in support of our cross appeal. I want to instead focus on two other issues I haven't discussed yet. There was an allegation that there was no adverse injury or impact on Mary Lee or on Roger Lee in regard to the decisions that were made by the board or ratified later after decisions had been made, as I suggested before, by folks who had no business doing that. Now what happened is Mary Lee is adversely impacted by not being able to perform her duties. We've already talked about that. Secondarily, she's also impacted because she's prevented from expressing her views on an issue of very important public matters for not only her, but also Gail Larson, the other representative who is elected in that region and all the other farmers and homeowners in that area who use that road. Ultimately we do end up with a road that is different from any other road in that township. The record reflects here, and unfortunately Judge Pearsall at the district court level didn't see it this way, but the record is very clear that they're the only ones who are subjected to a road that washes out every 10 years or so because they didn't build this road and then rebuild it after the flooding to meet the minimum standard, which is a 10 year flooding event or 10 year rainfall event. They're the only ones who have to put up with what they call a low water crossing because after they got in trouble for using FEMA funds for a project that they didn't build to the, to the agreed standards, they put in the eight foot culvert and the three foot culvert that had already washed out once because they were inadequate. And then to top it off, they said, well, we're going to, because we get to decide how to fix this and there's no authority for the lease or anyone else under state law to dictate how we do this road repair. We're going to put in what we call a low water crossing. And that's basically a big dip in the road. Now, could I go back and ask you about the adverse action point? You said, as I understand the law here, the adverse action in this context of first amendment retaliation means one that's sufficient to chill a person of ordinary firmness. That's what the cases say. Is that what we're talking about? That would be as to Roger Lee in regard to his attempts to petition for, for redress or to speak on these issues as to Mary Lee in her capacity as a citizen. That's also the same test. But in addition to that, the adverse injury here, adverse impact is the fact that she's prevented from doing the very things that she is elected to do. Okay. Well on the citizen aspect of it, how is it that they're chilled from speaking out? As I understand it, they spoke out, they were heard by the board and then the board closed the next meeting and that's the alleged retaliation that they weren't then allowed to participate in the next meeting. Am I right on the facts? A little different from that judge. They, they had a meeting that was, that was contentious. They kicked everybody out. Then under state law, it's considered to be a meeting if a quorum of the voting members of the town board get together to discuss matters. They didn't have an actual meeting. They made decisions and some of them were ratifications of things that were decided by the treasurer who doesn't vote. Others were decisions about how to pay back FEMA. And you're saying that your clients say they should have been able to participate in that or to be involved in that decision making. Yes. As to well, but how are they chilled by the fact that they weren't allowed to be in that? I mean, why would they then decide not to speak out? It's the ultimate chilling because they were not allowed to have any input because Mary Lee didn't know that they were meeting and she's the one who's supposed to give notice to the public that there's going to be a meeting. So they were, they had no opportunity to participate. Everything gets done. They're, they're told about it after the fact and they can't do anything about it. So in that regard, ability to communicate to the public is not hindered though, is correct. You're not, they're, they're not able to communicate to the public and they're not able to then go to their neighbors and create enough through their associational rights, enough of a groundswell of support to come into the township board and try to convince these people who are punishing them or who are retaliating against them to not do these things or to look at reasonable alternatives. Roger Lee was, I see my time is up, but Roger Lee was also going to offer and try to work with the County or the state to come up with other funds. And they want to argue this is strictly a fiscal decision. Well, they didn't even consider other options. So the leaves were chilled from being able to pursue that and come up with some other alternatives for what they had already decided they were going to do. Thank you, Mr. Donoho. Thank you. Mr. Peterson. Mr Donoho made the comment that the district court did not not see it the same way with respect to the road repairs and the policy and custom of the township. And I think the reason for that is that because those facts weren't in the record. Uh, if you look at, uh, the record in this case, there was no statement of undisputed material facts filed by the plaintiffs or any sort of response to our facts. So the facts that the district court was looking at were, were undisputed. Um, with respect to the road repair issue specifically, it was undisputed that the township was faced with, with somewhat of an untenable situation. Either they return the, the, the culverts to this exact same way that they were prior to the washout, or they would go with the hazard mitigation proposal that would involve the township spending considerably more funds that it didn't have in order to repair that, that situation. Anything else they did was on their own dime. And so I don't think the district court got anything wrong with respect to the, the road repair issue. I think the district court looked at what record, what facts were actually presented in the record and made his decision based on that. The same would be true with respect to the Monell claim. There was absolutely no evidence presented of anything beyond this 219th street project that would show a policy customer practice of this township such as what's been alleged here today. And there certainly were no undisputed facts presented to that effect. And so I don't think there was any basis in the record for the district court to decide the Monell claim any differently than it did. Um, those are the only comments I have your honor, unless you have any questions. I see none. Thank you, Mr. Peterson. Court wishes to thank both counsel for your presence and arguments you've  presented. We'll take your case under advisement, render decision due course. Thank you.